United States District Court
District Court of Maine

U.S. DISTRICT COURT
DISTRICT OF MAINE
BANGOR
RECEIVED & FILED

2020 FEB -7 P 12: 06

GLEN PLOURDE,                          )
                                       )
              Plaintiff                )
                                       )    Complaint for a Civil Case
       v.                              )    And Demand for a Jury Trial
                                       )
NORTHERN LIGHT ACADIA                  )    Civil Action No. 1:20-cv-00043-JAW
HOSPITAL, CHARMAINE PATEL,             )
ANTHONY NG, WARREN BLACK,              )
                                       )
              Defendants               )

## I. Parties to the Complaint

Plaintiff

   1.   Glen Plourde
        455 Chapman Road
        Newburgh, Penobscot County
        Maine 04444
        207.659.2595
        Glen.Plourde@Gmail.com

Defendant #1

   2.   Northern Light Acadia Hospital
        268 Stillwater Avenue
        Bangor, Penobscot County
        Maine 04401
        207.973.6100
        Email Unknown

Defendant #2

   3.   Charmaine Patel, Psychiatrist, Northern Light Acadia Hospital
        268 Stillwater Avenue  (Northern Light Acadia Hospital)
        Bangor, Penobscot County
        Maine 04401
        207.973.6100
        Email Unknown

- 1 -

Defendant #3

    4.    Anthony Ng, Lead Psychiatrist, Northern Light Acadia Hospital
           268 Stillwater Avenue (Northern Light Acadia Hospital)
           Bangor, Penobscot County
           Maine 04401
           207.973.6100
           Email Unknown

Defendant #4

    5.    Warren Black, Nurse Practitioner Specialist, Northern Light Acadia
           Hospital
           268 Stillwater Avenue (Northern Light Acadia Hospital)
           Bangor, Penobscot County
           Maine 04401
           207.973.6100
           Email Unknown

## II.  Jurisdiction and Venue

6.    This Court has subject matter jurisdiction over Plaintiff's Federal Constitutional Claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, as this action arises under the Constitution and laws of the United States.

7.    This Court has subject matter jurisdiction over Plaintiffs' Maine State Constitutional and Civil Claims pursuant to 28 U.S.C. § 1367, as those claims are substantially related, both legally and factually, to the Federal Constitutional Claims upon which original jurisdiction is premised.

8.    This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1332 Diversity as the Plaintiff understands that some of the Defendants are "Traveling Nurses" and as such are not residents of the District.  The court furthermore has jurisdiction over the remaining Defendants as they are residents of the District.

9.    Venue in this district is proper under 28 U.S.C. § 1391(b) because the Defendants are residents of the District and the Court has jurisdiction over those who are not pursuant to 28 U.S.C. § 1332, and the events giving rise to the claim occurred within the district.

10. This case is properly filed in Bangor because the Plaintiff was subject to unlawful action in Penobscot County.

### III. Statement of Facts

11. The Plaintiff would begin by respectfully requesting that The Honorable Court abstain from making a preliminary review of this complaint before the Plaintiff can properly amend his complaint in the 21 days afforded to him by Fed. R. Civ. P. 15(a)(1)(A). The Plaintiff understands that currently the facts of this complaint are underdeveloped and wishes to inform The Court that the entirety of this complaint and the Defendants are not currently listed. This is due to the fact that this complaint has aspects of Federal and International Law that are complicated to this Pro Se Plaintiff and as such will require some additional research and due diligence on the part of the Plaintiff to correctly state them. The Plaintiff is under time constraints and personal obligations and must regretfully file this complaint at this time, a most unfortunate circumstance, and one that the Plaintiff will do his best to avoid in the future. The Plaintiff estimates that it will take him much less time than the 21 days afforded to him to properly amend his complaint (perhaps 7 days), and therefore thanks The Honorable Court for its patience and understanding in waiting for a properly amended complaint before conducting a preliminary review.

12. On or about the night of January 21 2017, the Plaintiff was transferred against his will by Redington-Fairview Hospital to Northern Light Acadia Hospital ("Acadia Hospital") in Bangor Maine.

13. Plaintiff was assigned Dr. Charmaine Patel ("Dr. Patel") by Acadia Hospital to be his attending Psychologist.

14. At the earliest opportunity available to him, the Plaintiff refused all medical treatment and demanded to be released. Plaintiff made this demand known to various nurses, as well as Dr. Patel.

15. Dr. Patel and the rest of the Acadia Medical Staff the Plaintiff spoke with refused to release him although they never stated to the Plaintiff why or under what authority he was being held, despite his repeated inquiries.

16. There was no emergency and the Plaintiff was not impaired in any way ("unimpaired capacity") (See Exhibit C).

17.   Plaintiff had not abjugated his self-authority to another person or entity nor had he been arrested or involuntarily committed, this was not an emergency situation and the Plaintiff had explicitly refused medical attention and demanded to be released (See Exhibit C).

18.   Plaintiff therefore asserts he was being held unlawfully and against his will by Acadia Hospital and its staff, a violation of his United States Constitutional Fourth Amendment Rights and Maine State Constitution Article 1 Section 5 Rights, that being unlawful seizure of his person.

19.   Plaintiff furthermore asserts that he was subjected to Medical Malpractice by Acadia Hospital and its staff as he had refused any and all medical treatment and there was no lawful reason to hold him, yet they refused to release him and forced "medical treatment" upon him.

20.   Dr. Patel demanded that the Plaintiff take the neuroleptic drug Quetiapine ("Seroquel").  Plaintiff refused.

21.   Plaintiff refused to take the Seroquel but was coerced into taking it (unlawful, see Exhibit C) by Dr. Patel as she told him that it was non-negotiable, and should the Plaintiff refuse to willingly take it orally it would administered unwillingly by injection.

22.   Furthermore, Dr. Patel coerced the Plaintiff (unlawful, see Exhibit C) into taking Seroquel orally by stating to the Plaintiff that his cooperation would result in his release being sooner than later, and it was clear to the Plaintiff by this time that the Plaintiff could not secure his own release himself regardless of how many times he demanded it, refused medical treatment, or attempted to reason with Dr. Patel and the staff at Acadia Hospital (See ¶¶14 – 15)

23.   There was no emergency and the Plaintiff was not impaired in any way ("unimpaired capacity") (See Exhibit C).

24.   Plaintiff had not abjugated his self-authority to another person or entity nor had he been arrested or involuntarily committed, this was not an emergency situation and the Plaintiff had explicitly refused medical treatment and demanded to be released (See Exhibit C).

25.   Plaintiff therefore asserts that he was subjected to Medical Malpractice by Dr. Patel as he had refused to take the neuroleptic Seroquel and was coerced into taking it by Dr. Patel, which is illegal (See Exhibit C).

26. As it was the Plaintiff was not released until approximately February 8 2017, which, when combined with the time the Plaintiff spent confined at Redington-Fairview, totaled 28 days and is to the Plaintiff's understanding the maximum amount of time a patient who is not involuntarily committed can be held.

27. A few days' later the Plaintiff was reading the bulletin board in the "lobby" of the Acadia Hospital Wing he was confined to and noticed that posted on it was a "Patients Bill of Rights" which, according to that document, is required to be posted in a common area.

28. This "Patients Bill of Rights" explicitly stated (Plaintiff recalls it to be either Right #3 or #4 but may be mistaken) that any patient (including the Plaintiff) had the right to refuse to take any and all medication.

29. Dr. Patel just happened to be leaving the "lobby" at that time and noticed the Plaintiff examining the Patient's Bill of Rights. The expression on her face was clearly one of anger and frustration.

30. At the Plaintiff's next meeting with Dr. Patel, Dr. Patel preempted the Plaintiff's impending discussion of his Patient's Bill of Rights by immediately stating to the Plaintiff, completely out of context, that he could "stop taking Seroquel if he wanted to".

31. Plaintiff therefore asserts that he was subjected to intentional and malicious Medical Malpractice by Dr. Patel as he had refused to take the neuroleptic Seroquel and was coerced into taking it by Dr. Patel, which is illegal (See Exhibit C and ¶¶21 – 22). It is safe to assume that as a medical professional Dr. Patel clearly knew the Plaintiff had the legal right to refuse to take any and all medication, and this logical contention is bolstered by the facts in (¶¶29 – 30)

32. Plaintiff therefore discontinued taking Seroquel that day.

33. The following day, the Plaintiff was informed by the nurse at the "medication window" that his long-standing (10+ years) daily dose of prescription anti-anxiety medication (Clonazepam) that he takes for Post Traumatic Stress Disorder (diagnosed in approximately 2006) was reduced by 50% by Dr. Patel for no stated reason or explanation.

34. This action can only be described as punitive in the Plaintiff's estimation.

35. This dramatic and instantaneous reduction (titration off of) of the Plaintiff's prescription anti-anxiety medication is 400% below the minimum "safe level" recommended by every Physicians Desk Reference Manual the Plaintiff has ever read (and he has read half a dozen or more) and is likewise 400% below the minimum "safe level" recommended by every Psychiatrist who has ever prescribed the Plaintiff with this anti-anxiety medication.

36. Such a sudden reduction in the Plaintiff's prescription anti-anxiety medication as detailed in (¶¶33 – 35) puts him at serious risk for seizure and other serious and highly-undesirable nervous-system complications, as well as makes the patient (the Plaintiff) extremely uncomfortable, anxious, frightened, and prone to panic attacks; as it did at Acadia Hospital.

37. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Dr. Patel, who unilaterally and without explanation cut the Plaintiff's long-standing (10+ years) anti-anxiety prescription literally in half (¶33), despite the serious risks of doing so that are well known to the medical community (¶¶35 – 36).

38. The Plaintiff immediately filed three Grievances against Dr. Patel with "Floor Manager" Marissa Ellis, using the Official Grievance forms provided by Acadia Hospital.

39. Nothing ever became of these Official Grievances despite the fact that there is a clearly defined path for patient's filing Grievances against Acadia Staff.

40. However, a day or two later while the Plaintiff was at the "Medication Window" arguing for his dose of anti-anxiety medication, the Plaintiff was suspiciously passed by Dr. Anthony Ng ("Dr. Ng") and Dr. Warren Black ("Dr. Black").  Plaintiff clearly recognizes these individuals as he has met them both prior to this occasion.

41. The Plaintiff also understands that Dr. Ng functions as the "Lead Psychiatrist" for at least the Wing of Acadia Hospital that the Plaintiff was confined to.

42. As Dr. Ng passed the Plaintiff, he said out of context, and clearly directed at the Plaintiff; "I know what she's [Dr. Patel] up to, but I let her do what she wants".

43. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Dr. Ng and Acadia Hospital, who clearly knew that Dr. Patel had unilaterally and without explanation cut the Plaintiff's long-standing (10+ years) anti-anxiety prescription literally in half (¶33), and refused to do anything about it, despite the serious risks of doing so that are well known to the medical community (¶¶35 – 36).

44. Plaintiff furthermore asserts that he was subjected to Medical Malpractice by Dr. Black, who clearly knew that Dr. Patel had unilaterally and without explanation cut the Plaintiff's long-standing (10+ years) anti-anxiety prescription literally in half (¶33), and refused to do anything about it, despite the serious risks of doing so that are well known to the medical community (¶¶35 – 36).

45. Plaintiff realizes that The Honorable Court may wish to take the position that this "indirect communication" may be subject to interpretation and therefore seeks to reassure The Court that it was quite clear what Dr. Ng was stating and who he was stating it to, and the Plaintiff's statements in (¶¶40 – 42) will be undeniably confirmed by Acadia Hospital's own security footage, the cameras of which were conspicuous and within plain sight of the medication window where this interaction occurred.  Plaintiff intends to subpoena this security footage during the Formal Discovery Process.

46. During the extent of the Plaintiff's incarceration at Acadia Hospital, he was subjected to harassment and even assault by both Acadia Staff and other "patients".  The Plaintiff will elaborate on and develop this fact in the amended complaint he has referred to in (11).

47. This ceaseless harassment by both Acadia Staff and Patients had the effect of exacerbating the Plaintiff's anxiety, which was already at a very high and uncomfortable level due to the fact that he was being held unlawfully and against his will as described in (¶¶14 – 18) and his anti-anxiety prescription had been dangerously, irresponsibly, and punitively reduced by 50% as described in (¶¶33 – 37).

48. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Acadia Hospital and its staff, who not only refused to stop the harassment by their own patients against the Plaintiff but actively participated in this cruel, unusual, and needless harassment as well.

49. Additionally, the Plaintiff was assigned to a room directly opposite the "medication window", where patients routinely assembled throughout the day to line up for their medication and converse with one another.

50. This location made it easy for these patients to harass the Plaintiff, who spent the majority of his time inside his room as he was thoroughly disgusted with the situation and wished to interact with the staff and patients as little as possible.

51. Plaintiff therefore asked various nurses for a room change, who in-turn refused to change his room.

52. Clearly, it is not healthy for someone suffering from an anxiety disorder, such as the Plaintiff, who has had his anti-anxiety prescription cut in half as described in (¶¶33 – 37), to be placed in a high-traffic area (directly in front of the medication window) where fellow patients routinely harassed him, a fact that the Plaintiff had communicated to the Acadia Staff who took no action to curb this harassment.

53. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Acadia Hospital and its staff, who not only refused to stop the harassment by their own patients against the Plaintiff but refused to move the Plaintiff to a quiet, low-traffic area, such as the parallel hallway close to the Dr.'s offices where Patients have no reason to be unless escorted by Acadia Staff.

54. Dr. Patel has asserted the Plaintiff has Schizophrenia, the most serious, debilitating, and degenerative mental illness in existence.

55. Approximately two days before the 28 day "maximum holding time" referred to in (¶26), Dr. Patel became extremely anxious to remove The Plaintiff from Acadia Hospital.

56. Dr. Patel could not locate the Plaintiff's parents, despite the Plaintiff's cooperation in that effort, and threatened to literally have the Plaintiff forcefully discharged to the sidewalk; never mind a "half-way house" or homeless shelter.

57. Dr. Patel even offered to buy the Plaintiff a bus ticket anywhere he wanted to go, even to New York City, where the Plaintiff had stated he would complain of the Torture he had endured to the United Nations. Dr. Patel was not joking about buying the Plaintiff a bus ticket, this was a serious offer.  The Plaintiff was not joking either.

58. The Plaintiff contends that it is highly irresponsible and irrational for Dr. Patel, who contends that the Plaintiff suffers from the most serious and debilitating mental disorder in existence, to even consider, much

finally concludes by quoting the great poet George Gordon Lord Byron; "Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age old insight that many allegations might be "strange, but true; for truth is always strange, stranger than fiction.""" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Medical Providers are forced to pay billions of dollars each year as a result of Medical Malpractice with literally hundreds of thousands, if not millions, of people falling victim to medical malpractice annually. The fact that the Plaintiff has become a victim of medical malpractice is therefore far from unlikely or strange given the statistics and the Plaintiff's Pedigree as discussed in Exhibits A and B.

### IV.  Claims for Relief

### Count 1

42 U.S.C. § 1983 – Deprivation of United States Constitutional Rights.

Glen Plourde v. Acadia Hospital et al.

88.  Paragraphs (11) – (87) are incorporated by reference as if pled herein.

89.  Plaintiff alleges that all Defendants have deprived him of his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, through unlawful seizure of his person and as such are liable to the Plaintiff for damages under 42 U.S.C. § 1983 as well as punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

### Count 2

5 M.R.S. § 4682 – Intentional Deprivation of United States Constitutional Rights.

Glen Plourde v. Acadia Hospital et al.

90.  Paragraphs (11) – (87) are incorporated by reference as if pled herein.

91.  Plaintiff alleges that all Defendants have intentionally deprived him of his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, through unlawful seizure of his person and as

less seriously threaten, to discharge the Plaintiff to the sidewalk, or to make a real offer to buy the "seriously mentally ill patient" a bus-ticket to wherever he wanted to go, curtesy of Acadia Hospital.

59. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Dr. Patel, who contends that the Plaintiff suffers from the most serious and debilitating mental illness in existence, yet has attempted to secure his agreement in being discharged to the sidewalk or accept an all-expenses paid bus-ticket curtesy of Acadia Hospital to whatever location he wished to travel to.

60. During a conversation with Dr. Patel, in which the Plaintiff was recounting his incident with Redington-Fairview Hospital (Ref. 2:20-cv-00011-JAW), Dr. Patel confirmed the Plaintiff's factual version of events and told the Plaintiff he had "been targeted" but refused to state by who or why.

61. The Plaintiff believes, but cannot state with certainty, that this statement was made in the presence of his Mother.

62. Clearly Dr. Patel knows more than she was willing to tell the Plaintiff at that time, and the Plaintiff will seek additional information regarding this "targeting" during the Formal Discovery Process. The Plaintiff is aware that his conversations with Dr. Patel were recorded so it should be a simple process to subpoena the evidence that this statement was indeed made by Dr. Patel.

63. The Plaintiff has a well-founded and reasonable belief that the "targeting" he was subject to and that was confirmed by Dr. Patel was by the Federal Bureau of Investigation ("FBI"), whom the Plaintiff has a long-standing and adversarial history with extending back to 2012 and probably more like 2004 or even prior (See Exhibits A & B).

64. The Plaintiff has no other "enemies" that he knows of and it is illogical to think that anyone would have an interest in "targeting" the Plaintiff for anything, much less Hospital Incarceration, except the FBI and perhaps the Maine State Government, or likely both working in concert and collaboration, as undermining his assertions, particularly torture, would clearly be in their "best interest" although highly-illegal and unethical (See Exhibits A & B).

65. During the "Discharge Conversation" between Dr. Patel, The Plaintiff, and the Plaintiff's Mother, Dr. Patel strongly encouraged The Plaintiff's Mother to sever all ties with the Plaintiff immediately.

66. Anyone who knows anything about Schizophrenia, the Mental Illness Dr. Patel has asserted the Plaintiff has, knows that a strong Family and Friend Network is the best treatment available for this disease. Dr. Patel, however, was strongly suggesting to the Plaintiff's Mother that she sever all ties with him, which is in direct contradiction to the best treatment available for Schizophrenia, as any Mental Health Provider knows.

67. Plaintiff therefore asserts that he was subjected to Medical Malpractice by Dr. Patel, who contends that the Plaintiff suffers from the most serious and debilitating mental illness in existence yet has advised the Plaintiff's Mother to sever all ties with him, which is in direct contradiction to the best treatment available for Schizophrenia.

68. Dr. Patel attempted to make the Plaintiff fill out some paperwork regarding payment for the "medical treatment" he received at Acadia Hospital, among other things.

69. The Plaintiff refused to cooperate with this endeavor in any way and refused to sign any paperwork whatsoever due to the fact that he was highly angry and upset with being held against his will and mistreated by Acadia Hospital as described in this complaint.

70. Dr. Patel stated the Plaintiff could not be discharged unless he complied, a statement the Plaintiff found amusing due to the facts listed in (¶¶55 – 59).

71. The Plaintiff told Dr. Patel that should he be forced or coerced into signing anything, he would sign it as "John Hancock signed the Declaration of Independence, in letters so large it would be clear there was definitely something wrong".

72. Dr. Patel then relented and stopped attempting to have the Plaintiff sign anything whatsoever.

73. The Plaintiff was discharged upon his own recognizance on or about February 08 2017 after receiving some necessary possessions from his Mother while at Acadia Hospital.

74. The Plaintiff immediately threw away the prescription for the unnecessary neuroleptic Dr. Patel had prescribed for the Schizophrenia the Plaintiff does not have and has never looked back since.

82. Plaintiff now harbors a well-founded distrust of the medical community as clearly the "medical treatment" he was forced to receive from Acadia Hospital was not in his best interest nor was it even legal.

83. Plaintiff is highly-disturbed by the Fact that he has reported this situation to his State Government as described in (¶¶76 – 77) and the FBI as described in (¶78) and nothing has been done about it. This Fact leads the Plaintiff to the logical conclusion that this behavior is condoned by those agencies and gives the Plaintiff the justifiable belief that this unlawful, unofficial involuntary incarceration and forced medical treatment could happen to him again at any time in the future.

84. The Plaintiff has a highly-justifiable and well-founded belief that this involuntary, unnecessary, and illegal medical treatment has been conducted at the behest of the Federal Government and/or the FBI in order to undermine his Factual Claims of the Torture that he has endured in 2012 – 2013 as the Plaintiff's Mental Health was never in question prior to his disclosure of the Torture he has endured.

85. Plaintiff wishes to preempt a *Neitzke*-like challenge to this complaint by reminding The Honorable Court that The United States Supreme Court has held that "a court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless"". *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The Facts alleged in this complaint are clearly not baseless as the Fact that the Plaintiff was an in-patient at Acadia Hospital during the time of January 21 2017 – February 08 2017 is indisputable, and the Hospital Records will support this fact.

86. Plaintiff wishes to preempt a *Denton*-like challenge to this complaint by recognizing that this complaint is perhaps not ordinary in the sense that some of the Facts are rather grievous, heinous, and perhaps unusual. After all, who wants to believe that in the United States of America, people are illegally held against their will at Mental Hospitals where the Doctors not only Practice Medical Malpractice but Practice Intentional Medical Malpractice. That type of atrocity only happens to political dissidents in third-world countries and iron-fisted Communist Dictatorships, right? Well, unfortunately, wrong; it does happen to citizens of the United States of America and it has happened to the Plaintiff as described in this complaint.

87. The United States Supreme Court has held that "An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely" and continues to elaborate and

such are liable to the Plaintiff for damages under 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 3

5 M.R.S. § 4682 – Intentional Deprivation of Maine State Constitutional Rights.

Glen Plourde v. Redington-Fairview General Hospital et al.

92.   Paragraphs (11) – (87) are incorporated by reference as if pled herein.

93.   Plaintiff alleges that all Defendants have intentionally denied him his Article 1 Section 5 Rights secured by The Maine State Constitution, through unlawful seizure of his person, and as such are liable to the Plaintiff for damages under 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 4

24 M.R.S. § 2853 – Medical Malpractice.

Glen Plourde v. Redington-Fairview General Hospital et al.

94.   Paragraphs (11) – (87) are incorporated by reference as if pled herein.

95.   Plaintiff alleges that all Defendants have engaged in malicious and intentional medical malpractice, and as such are liable to the Plaintiff for damages as a result of that malpractice.

75.   The Plaintiff has never received a bill or invoice for the "medical treatment" he was subjected to at Acadia Hospital, a fact he finds suspicious.

76.   Plaintiff has made The Office of Senator Susan Collins, The Office of Governor LePage, The Maine Government Oversight Committee, and the Maine Human Rights Commission aware of the events detailed in (¶¶11 – 75) on August 2 2017 and August 4 2017, and has asked for assistance with this matter, yet has received no reply whatsoever from any of those offices.  The document submitted to those offices asking for assistance has been included in this Complaint as "Exhibit A" (Page 13 #20 – 21 briefly details this incident).

77.   Plaintiff has again made the Agencies cited in (¶76) aware of this situation, this time in a properly notarized and punishable per perjury affidavit, on October 16 2018, and has again asked for their assistance with this matter, and has again received no reply from them whatsoever.  The document submitted to those offices is identical to Exhibit A, bearing notary, and has been included in this Complaint as "Exhibit B".

78.   Plaintiff has met with the Federal Bureau of Investigation ("FBI") at their Chelsea, Massachusetts Regional Field Headquarters on October 11 2017 and has provided them copy of Exhibit A.  At no time has the Plaintiff received any reply whatsoever from the FBI.

79.   Plaintiff has been diagnosed with Post Traumatic Stress Disorder ("PTSD") in approximately 2006 and this incident has aggravated that condition and left a lasting scar on his psychological and emotional well-being.

80.   Plaintiff was extremely disturbed by this incident and this unofficial involuntary incarceration and forced medical treatment at Acadia Hospital (Plaintiff was never judged by a court to have "impaired capacity" nor were the Laws of Informed Consent to Treatment followed; See Appendix C) and has suffered a high-degree of anxiety, fear and emotional distress during this unofficial involuntary incarceration.

81.   Plaintiff is still extremely disturbed by this incident and this unofficial involuntary incarceration and forced medical treatment at Acadia Hospital and continues to suffer a high-degree of anxiety and emotional distress as a result of this situation.  Years have passed yet the memories remain and they are extremely unpleasant, frightful and anxiety-provoking.

- 11 -

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to
the best of my knowledge, information, and belief that this complaint: (1)
is not being presented for an improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation; (2) is
supported by existing law or by a nonfrivolous argument for extending,
modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have
evidentiary support after a reasonable opportunity for further
investigation or discovery; and (4) the complaint otherwise complies with
the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address
where case related papers may be served. I understand that my failure to
keep a current address on file with the Clerk's Office may result in the
dismissal of my case.

Date of signing: _Feb 06_ , 20_20_

Signature of Plaintiff _____

Printed Name of Plaintiff _____